THE COURT
ruled out the evidence. It was not competent to introduce parol evidence to vary the terms of a written contract. The testimony is not offered to establish a general usage, but to vary this particular agreement.
WRIGHT, J. charged the jury. The bill of lading is the contract between the parties, and is to be construed according to the terms expressed in it; though if there is a common usage of the trade affecting the question, that usage will be regarded as within the contemplation of the contracting parties, and a compliance with the contract as modified by such usage will satisfy the stipulations of the contract. But a usage to affect the contract, must be common, and general; not fluctuating, or dependent upon price, or other such circumstance. If a carrier would reserve to himself the right to vary from a contract of lading drawn in the usual form, or avail himself of the privilege of change, he must stipulate for the leave, and vary the bill of lading so as to meet the stipulation. This bill of lading must be taken altogether, including the memorandum as to the steamboat Tecumseh. So taken, its legal effect is an undertaking by the defendant, to carry the plaintiff’s freight from Cincinnati, in the Tecumseh, to the Amazon below the falls; but as the *198 usage of the river tráde, when the water is too low for the small steamboat above the falls to pass over in safety, is to transport from Louisville to Shippingport by other means, that usage the law holds to have been within the contemplation of the parties, and to form a part of their contract. A carrier is liable for all injury to the freight, which does not arise from the act of God (inevitable accident), or the enemies of the state. He undertakes for the safe-keeping of the goods entrusted to him, the proper conduct of the vessel, and the keeping the proper lights and watch for her preservation. He is bound not to expose the goods to any extraordinary hazard, or risk, and if he deviate from the usual and common course of the trade, and the goods are lost or injured during such deviation, and exposure, he is not excused, even if the loss or injury result from inevitable accident, or the public enemies. Such excuse is only available to himwhilein the pursuit of his voyage in the usual way.
196] *You will then inquire what was the state of the water when the Tecumseh arrived at Louisville, and if you are satisfied there was sufficient water for her to have passed safely over the falls, it was the duty of the defendants, under their contract, to carry the goods over in that way; and if with sufficient water for the Tecumseh to pass the falls, the defendants chose to tranship the goods in fiats for their own convenience, and while they were so exposed, they were lost by inevitable accident, the carriers are accountable, because they have unnecessarily exposed them to extraordinary risk. If you find this to be the case, the plaintiff’s right to recover is established, and you will not be under the necessity of looking any further.
If you shall be satisfied that the stage of water in the river was such when the Tecumseh arrived at Louisville, as to render it unsafe for her to pass over the falls, then her cargo was subject to be transported over, or around the falls, in the mode adopted by the common usage of the trade in such case. If it was the common custom to light the boat over by transhipping a part of the cargo, or to keep her above the falls, and send the whole cargo over in flats, or around in drays, that common custom must be followed by the carrier. If two methods are in common use to overcome suoh difficulty, the one more hazardous than the other, the carrier adopts the most hazardous method at 'his own risk and responsibility, and if loss intervene, it is his loss. This results from the nature of the employment. The carrier is the agent of the shipper and owner, and is the servant also of the latter; and he is not permitted, for his own *199 ■convenience, to subject goods entrusted to Mm to any increased risk. In this case it is not disputed that there are two ways of transporting goods past the falls in low water, by drays and by flat boats. It is urged that the whole amount of the testimony, the> j>rice of insurance, and the nature of the transportation itself, conclusively show that the use of flat boats is the most hazardous, and was, therefore, adopted at the risk of the carrier. It is for you to judge, from all the circumstances in proof, and if the mode by drays is the least hazardous, the circumstance that the increased hazard'of flat boats is counterbalanced by the more cleanly appearance of goods so transported, or their less expoosure to the heat of the sun,; and the consequent preference of that mode of conveyance, leaves' the question of hazard, and the point of common custom, wholly untouched. But if, by the common custom, flats are used to trans-, port cargoes over the falls, then, and then only, can it be necessary Vfor you to inquire, whether the flats, while moored above the [197 ■falls, were properly disposed of, or safely guarded.
If they had a right to load the cargo into flats to overcome the falls, according to the custom of the river, then you will inquire whether the defendants used due diligence for the preservation of the cargo, while exposed in flats; and whether it was destroyed by inevitable accident. If the loss resulted from the negligence or wanton act of the navigators of the Lady Franklin, it did not result from an inevitable accident, which alone will excuse the defendants from liability. In such case, we think the defendants are responsible to the plaintiffs, and have their remedy over against the Lady Franklin.
Verdict for the pflaintiffs. The case was afterwards settled, and judgment taken only for the costs.
[This ease had been in the Supreme Court; Lawrence v. Mc Gregor, 5 O. 309.]